ROBERT B. SCHWARTZ *vs.* THE TRAVELERS INDEMNITY
COMPANY & another.[1]

No. 97-P-2315.

Essex. January 19, 2000. - January 8, 2001.

Present: JACOBS, GILLERMAN, & GELINAS, JJ.

*Insurance,* Homeowner's insurance, Unfair act or practice, Broker. *Consumer
Protection Act,* Insurance, Unfair act or practice. *Limitations, Statute of.
Contract,* Insurance, Implied contract. *Agency,* Agent's duty of fidelity.
*Broker,* Insurance. *Fiduciary.*

Allegations in a claim brought by a policyholder against an insurer alleging
violation of G. L. c. 93A, by reason of unfair settlement practices under
G. L. c. 176D, were governed by the four-year statute of limitations period
set forth in G. L. c. 260, § 5A, and not the two-year period, as allowed by
G. L. c. 175, § 99, set forth in the policy. [674-677]

A Superior Court judge correctly concluded that a claim for unfair insurance
company settlement practices was time-barred under the applicable four-
year statute of limitations, G. L. c. 260, § 5A, and correctly granted sum-
mary judgment in favor of the defendant. [677-679]

This court concluded that the certain special circumstances of an insurance
broker's business relationship with an insured could give rise to obliga-
tions on the part of the broker such as would support a claim of breach of
contract claim arising out of the processing of the insured's claims under
the policy. [679-681]

Summary judgment was correctly entered in favor of an insurance broker on a
claim for breach of contract arising out of the processing of an insured's
claims, where there was no evidence that the insured suffered harm as a
result of the alleged breach. [681-682]

A Superior Court judge did not abuse her discretion in her actions with
respect to a civil plaintiff's claim that he did not have sufficient opportunity
to obtain affidavits opposing the defendant's motion for summary judgment.
[683]

CIVIL ACTION commenced in the Superior Court Department on
May 28, 1996.

A motion for summary judgment was heard by *Nancy S.*

[1]Mazonson, Inc.

*Merrick*, J., and entry of judgment was ordered by *Peter F. Brady*, J.

*George E. Richardson* for the plaintiff.

*Richard E. Cavanaugh* for the defendants.

GELINAS, J. In reviewing the motion judge's allowance of the defendants' motion for summary judgment, we consider whether the two-year limitation of actions provided in G. L. c. 175, § 99, and contained in a homeowner's insurance policy, governs a claim for unfair claim settlement practices described in G. L. c. 176D, § 3(9), and brought pursuant to G. L. c. 93A, § 9. We also assess whether, on a motion for summary judgment, a policyholder has demonstrated circumstances that created an actionable agency relationship with his insurance broker regarding settling claims against the insurer and, if there was such a relationship, whether he has shown any consequential damages. Finally, we determine whether the motion judge abused her discretion in denying a request pursuant to Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974), for a continuance or in failing to deny a motion for summary judgment, because the plaintiff Robert B. Schwartz did not have sufficient opportunity to obtain certain affidavits.

We conclude that Schwartz's claim under G. L. c. 176D, § 3(9), and G. L. c. 93A, is subject to the four-year statute of limitations contained in G. L. c. 260, § 5A. We determine, however, that the plaintiff's G. L. c. 93A claim against The Travelers Indemnity Company (Travelers) is time-barred even under the more generous four-year limitation statute. We further conclude that an insurance broker who sells a policy may, in some circumstances, become an agent of the purchaser of the policy for the settlement of postsale claims. In this case, however, although Schwartz provided sufficient material to survive a motion for summary judgment on the issue whether such an agency relationship had resulted in an implied contract that had been breached, he cannot recover against his broker, Mazonson, Inc. (Mazonson), as he cannot demonstrate damage as a result of any alleged breach. Finally, we find no abuse of discretion on the part of the motion judge in the matter of Schwartz's claim that he did not have full opportunity to obtain affidavits. We affirm the order granting summary judgment to the defendants for reasons different from those set forth by the Superior Court judge. See *Foley* v. *Lowell Sun Publishing Co.*, 404 Mass. 9, 10-11 (1989).

*Facts.* We set forth generally the circumstances surrounding Schwartz's claims, all taken from the decision of the motion judge, supplemented by the undisputed summary judgment record, reserving certain facts for the discussion of the individual issues. On October 30, 1991, a powerful storm raged along the Northeastern Atlantic coast of the United States and Canada. Called at the time the "Halloween Gale," it was later dramatized as "The Perfect Storm" in Sebastian Junger's novel and director Wolfgang Petersen's subsequent movie of the same name. The storm resulted in a less than "perfect" experience for Schwartz and many others living on the New England coast. Schwartz's home was bordered on three sides by the Atlantic Ocean. The storm and its attendant wave wash caused extensive damage to the basement area of the house; Schwartz suffered further damage to his living room and areas adjacent thereto caused, as he alleged, by wind and rain, for which there may have been coverage under his policy with Travelers, and not by the flood of wave wash, which was excluded from coverage with Travelers. Other structures on his property were damaged as well. Schwartz had flood insurance, through a company not a party to these proceedings; his claim there was settled and presents no issue here. Travelers refused to pay claims under its homeowner's policy for any damage inside the home; the company did pay for a small amount of damage to structures outside the house. This litigation followed.

Schwartz alleged in the trial court that (1) Travelers breached its contract by failing to pay for damage covered by the insurance policy; (2) Travelers engaged in unfair claim settlement practices, as defined in G. L. c. 176D, § 3(9), and that Travelers thereby engaged in unfair and deceptive practices under G. L. c. 93A; and (3) Mazonson, Schwartz's broker, was in breach of a contract with him whereby Mazonson had agreed to act as Schwartz's agent in pursuing settlement of his claim against Travelers. As to the count alleging Travelers' breach of contract in failing to pay the claim, the motion judge determined that the claim was barred because the policy's two-year limitation period had long expired. Schwartz does not contest that aspect of the summary judgment order.

*Claim pursuant to G. L. c. 176D and G. L. c. 93A.* Travelers argues that Schwartz has simply relabeled his contract claim as a G. L. c. 93A claim as a pretext to avoid the policy's two-year limitation period. Travelers contends, under the authority of

*Worldwide Commodities, Inc.* v. *J. Amicone Co.*, 36 Mass. App. Ct. 304 (1994), that such an attempt is not permitted, even assuming there was a " 'level of rascality'[2] sufficient to find a violation of c. 93A," *Worldwide Commodities Inc.*, *supra* at 307, because the contract violations were at the core of the c. 93A claims.

Travelers' argument is misdirected. *Worldwide Commodities, Inc.* v. *J. Amicone Co.*, *supra*, is not controlling because, in that case, there existed neither an independent statutory obligation nor a statutory remedy.[3] Here Schwartz's c. 93A claim is grounded in alleged violations of G. L. c. 176D.[4] Conduct prohibited in c. 176D is not merely "duplicative" of ordinary breach of contract claims based on the policy, although there may be some parallels. Rather, in this case, engaging in the conduct prohibited by G. L. c. 176D, and made unfair and deceptive by G. L. c. 93A, § 9, creates an action independent from the contract. See *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1, 27-28, cert. denied, 522 U.S. 1015 (1997).

We first note that some of the conduct prohibited in G. L. c. 176D, § 3(9), standing alone, would probably not constitute a breach of the contractual obligations contained in the policy. For instance, G. L. c. 176D, § 3(9), as inserted by St. 1972, c. 543, § 1, makes actionable the failure *"to adopt and implement reasonable standards* for the prompt investigation of claims . . .*"*; *"*[m]aking claims payments to insured or beneficiaries not *accompanied by a statement* setting forth the

---

[2]Phrases such as "level of rascality" are deemed "uninstructive" in deciding questions of unfairness under G. L. c. 93A. Courts should rather focus "on the nature of the challenged conduct and on the purpose and effect of that conduct." *Massachusetts Employers Ins. Exch.* v. *Propac-Mass, Inc.*, 420 Mass. 39, 42 (1995).

[3]*Worldwide Commodities, Inc.* v. *J. Amicone Co.*, 36 Mass. App. Ct. 304 (1994), involved the application of a choice of law paragraph in a contract for the distribution of food products as it might implicate a claim under G. L. c. 93A.

[4]General Laws c. 176D authorizes the Commissioner of Insurance (commissioner) to regulate the issuance of insurance policies. Section 3(9)(*a*)-(*n*) of the act defines certain activities as unfair claim settlement practices. Should the commissioner find, after investigation and hearing, that unfair claim settlement practices have occurred, he may take action against the violator, including suspension or revocation of its license, and he may impose a fine. General Laws c. 93A, § 9(1), establishes a private right of action for any person whose rights are affected by another person violating the provisions of G. L. c. 176D, § 3(9).

coverage under which payments are being made"; and the refusal "to pay claims without *conducting a reasonable investigation* based upon all available information" (emphases added). Whether the insurer eventually pays the claim and honors the contract, its method of conducting the claims settlement process, and the payment strategy it adopts, can implicate liability under c. 176D, and thus under c. 93A.[5] Schwartz's complaint, supported by his summary judgment materials, establishes a potential violation of the provisions of G. L. c. 176D, with respect to settlement practices, specifically, that Travelers, among other violations, failed to conduct a reasonable investigation by refusing to view the area of the claimed loss.

General Laws c. 260, § 5A, establishes a four-year limitation period for actions under G. L. c. 93A, as well as under G. L. c. 176D.[6] The inclusion of claims grounded in G. L. c. 176D in the four-year limitation period established by G. L. c. 260, § 5A, makes little sense unless those claims are interpreted as independent from claims arising out of the policy itself. In apparent conflict with c. 260, § 5A, the language of G. L. c. 175, § 99, as appearing in St. 1951, c. 478, § 1, provides that insurance contracts may include, as did the policy in this case, a provision that "*any claim by virtue of [this] policy*" (emphasis added) is subject to a two-year limitation period.[7] Travelers

---

[5]Plaintiffs would not be allowed to recover on an action where they have suffered no harm at all; the case law indicates that some kind of harm is required before damages can be recovered. See *Abdella* v. *United States Fid. & Guar. Co.*, 47 Mass. App. Ct. 148, 152-153 (1999) (dismissal of complaint permissible where trial judge found the defendant had violated G. L. c. 176D, but the plaintiff had suffered no harm).

[6]The relevant portion of c. 260, § 5A, as appearing in St. 1982, c. 332, § 11, states: "Actions arising on account of violations of any law intended for the protection of consumers, including . . . chapter ninety-three A; . . . [and] chapter one hundred and seventy-six D; . . . whether for damages, penalties or other relief and brought by any person, including the attorney general shall be commenced only within four years next after the cause of action accrues."

[7]In a postargument submission, Travelers points to the recent case of *Nunheimer* v. *Continental Ins. Co.*, 68 F. Supp. 2d 75 (D. Mass. 1999), where, in dicta, the Federal District Court determined that Nunheimer's claim for failure of payment under the policy, brought under G. L. c. 176D and G. L. c. 93A, was brought "by virtue of the policy" and thus was governed by the two-year limitation period. Mere allegations or conclusory assertions are insufficient to avoid summary judgment, *Benson* v. *Massachusetts Gen. Hosp.*, 49 Mass. App. Ct. 530, 532 (2000), and there is no indication that the plaintiff in that case pressed an independent violation of G. L. c. 176D, or presented factual

argues that, as this claim arises "by virtue of the policy," the two-year limitation period applies.

Principles of statutory construction assist in resolving this apparent conflict. "It 'is well established, that statutes alleged to be inconsistent with each other, in whole or in part, must be so construed as to give reasonable effect to both, unless there be some positive repugnancy between them.' *Brooks* v. *Fitchburg & Leominster St. Ry.*, 200 Mass. 8, 17 [1908]. *Everett* v. *Revere*, 344 Mass. 585, 589 [1962]." *Goldsmith* v. *Reliance Ins. Co.*, 353 Mass. 99, 102 (1967). See *Rita* v. *Carella*, 394 Mass. 822, 826 (1985). "We think the more reasonable approach, one consistent with long-standing practice in the courts of the Commonwealth as well as generally accepted canons of construction, is to view [an issue], governed by the specific provisions of [a rule], as constituting an exception to the general practice set forth [in another rule]. Cf. *Boston Hous. Auth.* v. *Labor Relations Comm'n*, 398 Mass. 715, 718-719 (1986)." *F. W. Webb Co.* v. *Averett*, 422 Mass. 625, 628-629 (1996). We conclude that the statute of limitations set forth in the standard form contract found in G. L. c. 175, § 99, must be read as inapplicable to claims brought under G. L. c. 93A that are grounded in G. L. c. 176D. The alternate reading would make meaningless the specific inclusion of c. 176D actions in c. 260, § 5A, since all claims against the insurer, even those under c. 176D, if viewed broadly, can be seen as claims brought "by virtue of [the] policy."

That said, we affirm the Superior Court judge's summary judgment denying Schwartz's G. L. c. 176D and c. 93A claim, as we determine Schwartz's claim to be time-barred even under the more expansive G. L. c. 260, § 5A, four-year statute of limitations.[8] Schwartz's action was filed on May 28, 1996; any claim arising prior to May 28, 1992, is therefore barred. We determine that Schwartz's claim in this instance arose before that date.

Schwartz received a letter from Travelers formally denying

material to support any such claim. We do not read *Nunheimer* as in conflict with our decision here; summary judgment would be appropriate if the plaintiff presented no more than a reiteration of his contract claim under the guise of a c. 93A violation, absent factual material to support activity, independent of a claim under the policy, violative of G. L. c. 176D.

[8]Whether a claim is barred by a statute of limitations is an appropriate subject of a motion for summary judgment. See, e.g., *King* v. *Sheriff of Franklin County*, 38 Mass. App. Ct. 925, 926 (1995).

the majority of his claim on June 12, 1992. The record available to the Superior Court judge on summary judgment, however, indicates that Schwartz knew, or should have known, at a much earlier date, that the inadequate investigation of his claim that allegedly violated G. L. c. 176D had occurred and that his claim against Travelers for damages inside the home had effectively been denied.

In *Hanson Hous. Authy.* v. *Dryvit Sys., Inc.*, 29 Mass. App. Ct. 440, 448 (1990), we determined that "[t]he accrual dates of the c. 93A claims are established by the same principles as govern the determination of the underlying actions." When the underlying actions constituting the G. L. c. 93A violation are tortious in nature, "[t]he accrual date for a c. 93A cause of action is determined by the same principles dispositive of the accrual dates of general tort actions," that is, "when the plaintiff knew or should have known of appreciable harm resulting from the defendant's [actions] . . . ." *International Mobiles Corp.* v. *Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass. App. Ct. 215, 221 (1990).

According to Schwartz's affidavit, as early as November 6, 1991, some seven days after the storm, investigator Kathy Gargan Steen, the Travelers adjuster, came to the house to inspect the premises. Steen told Schwartz that she would not speak directly with Schwartz about the claim because he had retained a public adjuster,[9] Paul Gordon of Gordon & Gordon Adjustment Company. She also refused to enter the home to view the damage to the interior that Schwartz claimed was covered by the Travelers' policy.[10] She spoke with Gordon on several occasions advising him, among other things, that she saw no evidence of wind or rain damage, even though she had not entered the home.

Materials submitted on the motion reveal that a representative of Travelers, on January 24, 1992, informed Gordon that the

---

[9]Public adjusters are licensed by the commissioner, see G. L. c. 175, §§ 162 and 172. They specialize in appraising damage caused by an event covered in a policy. Considered agents of the insured, *Bockser* v. *Dorchester Mut. Fire Ins. Co.*, 327 Mass. 473 (1951), they usually are paid a percentage of the proceeds ultimately recovered. The exact arrangement between Schwartz and Gordon does not appear on this record.

[10]Schwartz claimed that the wind had broken a large window, allowing wind-driven rain to pour into the living room and adjacent areas. He claimed that an inspection of the area would reveal no evidence of salt water wave wash and its attendant seashore detritus.

claim would be denied. Continuing efforts to have a Travelers' representative view the premises were unavailing. Early on Travelers took the position that any damage to Schwartz's home, and in particular to the living room and adjacent area, was the result of wave wash, a cause specifically excluded from coverage under the Travelers' policy.

According to Schwartz's own affidavit, April 16, 1992, is the latest date before which he could argue he lacked knowledge of the inadequate investigation of his claim. The affidavit states that, on that date, a manager of Travelers, Joseph Geaney, Jr., told Schwartz, "plain and simple that there were no winds that night" and left the meeting with no "change in his attitude," i.e., that Travelers denied that the claimed storm damage was due to wind and rain, and that they were not going to enter the house to view the living room and adjacent areas, despite Schwartz's and Gordon's strong insistence that the damage was of a type covered under the policy. Further, the only action that Travelers agreed to take, and did take, after April 16, 1992, was to hire an engineering firm to examine the exterior of Schwartz's home and grounds. As of that date, no one from Travelers had been inside Schwartz's home, and it was clear that the engineers were hired to view the exterior only. The inadequate settlement practices and investigation occurred before the June 12, 1992, letter that formally denied payment under the insurance contract. On this record, summary judgment favoring Travelers on the c. 176D and c. 93A action was appropriate.

*The contract claim against Mazonson.* The plaintiff pleaded causes of action against Mazonson in both tort and contract. The motion judge ruled that any tort cause of action against Mazonson was barred by the three-year statute of limitations. The plaintiff does not challenge this aspect of the motion judge's ruling. The motion judge also determined that there was no actionable breach of contract claim against Mazonson. The plaintiff urges that there were issues of material fact precluding summary judgment concerning whether Mazonson was the plaintiff's agent and whether, as his agent, the corporation breached a contract it had with the plaintiff resulting in damages to the plaintiff. A breach of contract claim is governed by the more generous six-year statute of limitations. G. L. c. 260, § 2.

We recognize, as did the Superior Court judge, that liability

as a fiduciary is not readily imposed on insurance agents and brokers in Massachusetts. "The relationship between an insurance broker and the insured is not normally thought to be fiduciary in nature, . . . absent 'special circumstances of assertion, representation and reliance.' " *Baldwin Crane & Equip. Corp.* v. *Riley & Rielly Ins. Agency, Inc.,* 44 Mass. App. Ct. 29, 31-32 (1997), quoting from *Rapp* v. *Lester L. Burdick, Inc.,* 336 Mass. 438, 442 (1957). We have imposed liability on a broker for breach of contract or negligence in obtaining coverage and establishing policy limits, see, e.g., *Bicknell, Inc.* v. *Havlin,* 9 Mass. App. Ct. 497 (1980). We have not previously addressed the issue of liability, either as a fiduciary or based on an implied contract, for postsale processing of claims.[11]

We conclude that there is no reason to exempt the claims settlement process from the duties for which insurance agents could be found liable, as a result of special circumstances. Under this view Mazonson, in order to prevail on summary judgment, was required to demonstrate that Schwartz had no reasonable expectation of proving the alleged special circumstances of "[a]n expanded agency agreement, arrangement or relationship, sufficient to require a greater duty from the agent," or that an expanded agency agreement existed because Mazonson had taken any action, such as "hold[ing] [itself] out as an insurance specialist, consultant or counselor." *Baldwin Crane & Equip. Corp.,* *supra* at 32, quoting from *Sandbulte* v. *Farm Bureau Mut. Ins. Co.,* 343 N.W.2d 457, 464 (Iowa 1984). Whether the "special circumstances of assertion, representation and reliance" which create an insurance agent's extended liability, including liability for breach of contract, exist "is a jury question." *McCue* v. *Prudential Ins. Co. of America,* 371 Mass. 659, 661 (1976), quoting from *Rapp, supra* at 442. Facts relevant to this inquiry include (1) the complexity and comprehensiveness of the insurance business; (2) whether a continuing relationship had existed between Schwartz and Mazonson, over a period of years; (3) the frequency of contact Mazonson had with Schwartz to attend to his insurance needs; and

---

[11]New York recognizes that a broker may have an obligation, postsale, to assist in processing claims. The obligation there, sounding in either tort or contract, is now deemed governed by the New York statute governing actions for malpractice (three-year limitation) rather than that for contracts (six-year limitation). See *National Life Ins. Co.* v. *Frank B. Hall & Co. of N.Y., Inc.,* 67 N.Y.2d 1021 (1986); *Chase Scientific Research, Inc.,* v. *NIA Group, Inc.,* 268 A.D.2d 115 (2000), appeal granted, 95 N.Y.2d 762 (2000).

(4) the extent to which Schwartz, because of the complexity of the policies, had come to rely on the advice of Mazonson, see *McCue, supra* at 661-663.

We view the materials, as we must in considering summary judgment, in the light most favorable to Schwartz. Schwartz presented evidence of a long relationship between Mazonson and himself. Schwartz had obtained insurance with respect to this property and other family and business insurance requirements through Mazonson or its predecessor company, Eigner & Mazonson, since 1976. When Schwartz called Mazonson to report the loss, he asked, and Mazonson agreed, to assist in processing the claim. Mazonson's representatives reported the loss, both verbally and in writing, to Travelers, relaying, according to Schwartz, incorrect information. Mazonson's president, Paul Mazonson (Paul), along with his father Barney Mazonson (Barney), personally came to Schwartz's home to view the damage and give advice. Paul responded to telephone calls and letters that Schwartz sent to him concerning the claim, passed information along to Travelers, and attended at least one meeting with Travelers and Schwartz. Viewed in the light most favorable to Schwartz, we determine that there was sufficient evidence to create a genuine issue of material fact whether Mazonson's actions, and the long-standing business relationship between the parties, created the "special circumstances of assertion, representation and reliance," *Rapp*, 336 Mass. at 442, giving rise to an obligation to process Schwartz's claims under the insurance policies, and, if such an obligation existed, whether there was a breach.

Summary judgment in favor of Mazonson was, however, properly granted. Even if Mazonson's actions toward Schwartz rose to the level of creating an enforceable implied contract to help process the claims, and even if Mazonson were determined to be in breach, "these failures [do] not qualify for jury consideration given that the record is barren of any evidence supporting an inference that the harm which befell [Schwartz] 'followed as a natural consequence . . . of the breach.' " *Harris* v. *Magri*, 39 Mass. App. Ct. 349, 354 (1995), quoting from *John Hetherington & Sons, Ltd.* v. *William Firth Co.*, 210 Mass. 8, 21 (1911).[12]

Early on, at Paul Mazonson's suggestion, Schwartz retained

---

[12]There is no c. 93A claim against Mazonson, Inc.

Gordon. Both Gordon and Schwartz immediately brought to Travelers' attention Schwartz's claim for wind and rain damages. Gordon pressed the wind and rain theory of damage throughout his employ by Schwartz. Any misinformation initially relayed by Mazonson regarding this aspect of the loss was corrected within a few days, and any impact the Mazonson report had on Travelers' failure to investigate was immediately dissipated. There is no evidence in the record that Travelers regarded Mazonson as Schwartz's representative concerning the claim, or that Travelers dealt with or relied on anyone representing Schwartz, other than Gordon and Schwartz's flood insurer, with regard to any aspect of the claim.

In March of 1992, Schwartz contacted Paul Mazonson and expressed a desire to speak directly with Travelers' representatives. Paul told Schwartz that Travelers would refuse direct discussion as long as Gordon was retained. Schwartz discharged Gordon. Thereafter Schwartz dealt directly with Travelers and never dealt through Paul or any other representative of Mazonson, except to ask that a meeting be established. The record does not support any theory under which a jury might find that Schwartz was damaged by any failure of Mazonson to process his claim or to assist in the settlement process.

We affirm the judge's ruling that Schwartz has no reasonable expectation of proving that harm occurred as a result of any breach of contract by Mazonson. In *St. Charles* v. *Kender*, 38 Mass. App. Ct. 155, 161 (1995), we emphasized that, even if a contract action can survive summary judgment, when the facts presented show that "a breach could be found but without actual damages," "no useful purpose would be served by remanding the matter" for simply an award of nominal damages. *Ibid.*, quoting from *Giannasca* v. *Everett Aluminum, Inc.*, 13 Mass. App. Ct. 208, 213 (1982). "It would be an imposition on the parties to consign them to further exertions in Superior Court from which the plaintiff could expect to recover no more than one dollar in damages." *Ibid.*[13]

---

[13]Although, in *St. Charles*, this court allowed the plaintiff an opportunity to adjudicate the abstract question whether a contract was formed and a breach thereof committed entitling him to nominal damages "in which event the case [would] be remanded to the Superior Court for that limited purpose," *St. Charles, supra* at 161, we see no useful purpose in doing so here. See *Forlano* v. *Hughes*, 393 Mass. 502, 509 n.11 (1984) ("Although the plaintiff might be entitled to nominal damages for the breach . . . , he has not urged

*Abuse of discretion.* Schwartz claims that the Superior Court judge abused her discretion by refusing to deny the defendants' motion for summary judgment or to order a continuance of any action thereon as requested by the plaintiff's attorney pursuant to Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974). There was no abuse of discretion. As early as April 8, 1997, the defendants' motion for summary judgment, their statement of reasons, and the plaintiff's opposition with supporting memoranda and affidavits had been filed with the court. The Superior Court judge did not issue her memorandum of decision and order on the motion until October 3, 1997. Prior to that date, on August 26, 1997, the defendants filed an assented-to reply memorandum in support of their motion. Schwartz was given sufficient time between April and October to file requests for sanctions or for other discovery if answers to interrogatories were not forthcoming.

*Judgment affirmed.*

---

this point on us, and hence we do not think it necessary to order entry of judgment for $1").